UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SONYA FIELDS, individually and as
Guardian and Conservator for
MITCHEL AVERY FIELDS, an
incapacitated person,                               Case No. 11-15296

                    Plaintiff,

                                                    Paul D. Borman
                                                    United States District Judge

v.
                                                    R. Steven Whalen
                                                    United States Magistrate Judge

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                    Defendant.
_____/

OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE TO STRIKE DEFENDANT'S AFFIRMATIVE
DEFENSES 8, 12 AND 13 (DKT. NO. 3)

        This matter is before the Court on Plaintiff Sonya Fields's, individually and as Guardian and

Conservator for Mitchel Avery Fields, an incapacitated person, ("Plaintiff") Motion for Partial

Summary Judgment Pursuant to Fed. R. Civ. P. 56, or, in the Alternative Motion to Strike

Defendant's Affirmative Defenses 8, 12 and 13 Pursuant to Fed. R. Civ. P. 12(f). (Dkt. No. 3.)

Defendant State Farm Mutual Automobile Insurance Company ("State Farm") filed a response.

(Dkt. No. 5.) Plaintiff filed a reply. (Dkt. No. 6.) Although this matter was originally scheduled for

a hearing, the Court deems this matter appropriate for decision without oral argument. *See* Fed. R.

Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Court DENIES Plaintiff's

motion.

1

**INTRODUCTION**

State Farm's insured, Mitchel Fields, was catastrophically injured in an automobile accident that occurred on April 10, 2010, and remains at home in need of 24-hour attendant care. His guardian, Sonya Fields, brings this action to recover certain benefits that State Farm allegedly has failed to pay, including attendant care, medical and wage loss benefits. The only benefits at issue in the instant motion for partial summary judgment are wage loss benefits, which State Farm has ceased paying because their insured refuses to apply for social security benefits which, under Michigan law, if awarded, would be required to be set-off against the amounts of wage loss benefits paid by State Farm.

Plaintiff argues that State Farm cannot require Mr. Fields to apply for social security and cannot set off amounts that Mr. Fields would be paid were he to apply for and receive such benefits. Plaintiff asks that the Court enter partial summary judgment in its favor, finding that State Farm had no legal basis to suspend Mr. Field's wage loss benefits based upon his failure to apply for social security benefits. Alternatively, Plaintiff asks the Court to strike each of State Farm's affirmative defenses, numbers 8, 12, and 13, which are based on State Farm's claim that it is entitled to set-off from Mr. Field's wage loss benefits the amount of the social security benefits for which Mr. Fields has refused to apply.

The Court concludes that Michigan law requires Mr. Fields to make reasonable efforts to obtain government benefits that may be available to him. The Court finds that, under Michigan law, State Farm's insured's refusal to make any effort to obtain available government benefits empowers State Farm to subtract from its wage loss payments those amounts that its insured would have been able to obtain had he applied for and began receiving social security benefits. The Court therefore

2

DENIES Plaintiff's motion for partial summary judgment and alternative motion to strike. (Dkt. No. 3.)

## I.    BACKGROUND

State Farm's insured, Mitchel Fields, was involved in a catastrophic automobile accident on April 10, 2010. Among other serious injuries, Mr. Fields sustained the traumatic amputation of his left upper arm, rib and spinal fractures, extensive trauma to his face and traumatic brain injury. (Pl.'s Mot. Ex. A, 4.) Mr. Fields remained at the University of Michigan hospital for several months and on April 28, 2010, Plaintiff Sonya Fields was appointed as his legal guardian. (Pl.'s Mot. Ex. B.) Mr. Fields remains at home in need of 24-hour attendant care. (Pl.'s Mot. 2.)

Mr. Fields was insured with State Farm at the time of the accident under a policy of insurance that required coordination of personal protection insurance ("PIP") benefits payable under the State Farm policy with other available medical and wage loss benefits. (Def.'s Resp. Ex. A, Policy of Insurance, 11 ("the Policy").) In relevant part, the Policy provides:

> 1. Any amount payable under Personal Injury Protection Coverage shall be reduced by any amount paid, payable or required to be paid under any federal or state law. This reduction does not apply to:
>
> a.    Medicare payments;
> b.    Workers Compensation benefits an employer is required to provide, but fails to do; or
> c.    Social Security old-age benefits.

Def.'s Resp. Ex. A, Policy 11. Pursuant to the Policy, State Farm paid (and continues to pay) no fault PIP benefits to/on behalf of Mr. Fields, thus far totaling over $300,000. (Def.'s Resp. 3.) This amount included $7,780.05 in work loss benefits that State Farm paid to Mr. Fields through October 16, 2010. (Def.'s Resp. Ex. C.) The Policy mirrors Mich. Comp. Laws § 500.3109(1), which

3

provides: "Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury."

Beginning on May 27, 2010, State Farm began sending Mr. Fields letters informing him of his potential eligibility for Social Security Disability ("SSD") Benefits and explaining State Farm's potential ability to set off, pursuant to Mich. Comp. Laws § 500.3109 and the Policy, amounts that Mr. Fields was eligible to receive in SSD Benefits. (Def.'s Resp. Ex. E.) The initial May 27, 2010 letter informed Mr. Fields that his "[f]ailure to make reasonable efforts to pursue these benefits may result in the reduction of [his] wage loss benefits by the amount of [his] projected Social Security Disability benefits." (*Id.*) The letter instructed Mr. Fields to contact the Social Security Administration to file an Application for Benefits within the next 30 days and to notify State Farm when the Application was filed. (*Id.*)

State Farm did not receive notification from Mr. Fields that he had applied for SSD Benefits and, on October 14, 2010, State Farm wrote to Mr. Fields indicating that they had not received notice of the filing and/or status of Mr. Fields' SSD claim. The letter explained that State Farm was unable to provide additional work loss benefits without first receiving information regarding Mr. Field's SSD benefit claim. The letter offered to provide Mr. Fields with assistance in submitting or pursuing his Application for SSD Benefits. (Def.'s Mot. Ex. F.)

On October 19, 2010, Mr. Fields' counsel, Joshua Lerner, wrote to State Farm asserting that there was no law that required Mr. Fields to apply for SSD Benefits and requesting an explanation of State Farm's request that Mr. Fields do so. (Pl.'s Mot. Ex. F.) On October 25, 2010, State Farm responded that because Mich. Comp. Laws § 500.3109 gave State Farm the right to set off amounts

4

required to be paid to Mr. Fields in SSD benefits, and because Mr. Fields refused even to apply for those benefits, State Farm was within its rights to set off an amount that they determined Mr. Fields would be entitled to had he applied for and received SSD Benefits. (Pl.'s Mot. Ex. G.)

On November 10, 2010, Mr. Lerner responded, directing State Farm to a December 1982 Attorney General Opinion which Mr. Lerner interpreted as prohibiting a no-fault insurer from "threaten[ing] the severance of wage loss benefits to force the claimant to file Social Security benefits." (Pl.'s Mot. Ex. H.) On December 1, 2010, State Farm responded that Michigan law, particularly the opinion of the Michigan Supreme Court in *Perez v. State Farm*, 418 Mich. 634 (1984), permitted State Farm to offset government benefits if the insured refused to use reasonable efforts to obtain them. (Pl.'s Mot. Ex. I.) The letter indicated that if Mr. Fields provided notice to State Farm that he had applied for SSD Benefits, State Farm would resume paying allowable Wage Loss benefits pending a ruling on his SSD Application for Benefits. (*Id.*) The letter recognized that, in the event Mr. Fields returned to work prior to one year following his accident, he would not be eligible for SSD Benefits. Nonetheless, State Farm demanded early filing of his Application so that Mr. Fields could preserve his right to receive the full extent of any available SSD Benefits. (*Id.*) This lawsuit followed.

## II.    STANDARD OF REVIEW

### A.    Motion for Partial Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of

material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323; *See also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must

6

set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating

the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir.

1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more

than a scintilla of evidence to survive summary judgment). The non-moving party must do more

than create "some metaphysical doubt" as to the material facts:

> Once the moving party has met its burden of production, the nonmoving party then
> must go beyond the pleadings and by affidavits, or by "depositions, answers to
> interrogatories, and admissions on file," designate "specific facts showing that there
> is a genuine issue for trial." [*Celotex Corp. v. Catrett*, 477 U.S. 317], 324 [1986].
> Thus, the nonmoving party must do more than show that there is some metaphysical
> doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio
> Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). It must
> present significant probative evidence in support of its complaint to defeat the motion
> for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106
> S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

*Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-moving party "may

not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but

must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander

v. Caresource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d

1472, 1479 (6th Cir.1989)). It is not the duty of the court "to search the entire record to establish that

it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479-80.

**B.    Motion to Strike**

Federal Rule of Civil Procedure 12(f) provides that "the court may order stricken from any

pleading any insufficient defense." Fed. R. Civ. P. 12(f). Motions to strike affirmative defenses

pursuant to Rule 12(f) are generally disfavored, but granting such motions is within the sound

discretion of the district court. *Ameriwood Indus. Int'l Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1084 (W.D. Mich. 1997). "An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstances. A motion to strike under Rule 12(f) is proper where it will eliminate spurious issues before trial and streamline the litigation." *Id.* (internal citations and quotation marks omitted).

## III.   ANALYSIS

The narrow issue presented in Plaintiff's motion for partial summary judgment, as well as the motion to strike, is whether State Farm is permitted under Michigan law to set off potentially available government benefits, in this case SSD Benefits, even if those benefits are not actually paid due to the fact that the insured failed to use reasonable efforts to obtain them. The Court's careful analysis of applicable Michigan law leads it to conclude that an insurer does have the right to off set SSD benefits, even if such benefits are not actually paid, if the insured fails to take reasonable steps to obtain this government benefit.

It is clear, under Michigan law, and Plaintiff cannot honestly dispute, that an insurer has the right to set off workers compensation benefits where the insured fails to use reasonable efforts to obtain them. The Michigan Supreme Court expressly so held in *Perez v. State Farm Mutual Automobile Insurance Co.*, 418 Mich. 634 (1984):

> The "required to be provided" clause of § 3109(1) means that the injured person is obliged to use reasonable efforts to obtain payments that are available from a workers' compensation insurer. If workers' compensation payments are available to him, he does not have a choice of seeking workers' compensation or no-fault benefits; the no-fault insurer is entitled to subtract the available workers' compensation payments even if they are not in fact paid because of the failure of the injured person to use reasonable efforts to obtain them.

418 Mich. at 645-46. The Michigan Supreme Court explained that such a reading of section 3109(1)

was consistent with one of the legislative objectives of the Michigan No-Fault Act - to help contain

the premium costs of no-fault insurance:

> Where workers' compensation benefits are available, but the injured worker does not
> exercise reasonable efforts to obtain them, the particular purpose of § 3109(1) to
> contain the cost of no-fault insurance prevails and the workers' compensation benefits
> are required to be subtracted from the no-fault benefits.

*Id*. at 648.  In *Perez*, workers compensation benefits were not available to the insured because his

employer did not carry workers compensation insurance.  Therefore, the Michigan Supreme Court

reasoned, in that particular instance where benefits were in fact not available to the insured, no set

off by the insurer was permitted because in such a case the overall objective of the No-Fault Act to

provided prompt and efficient recovery for certain losses caused by motor vehicle accidents trumped

the complementary goal of the No-Fault Act to contain the costs of no-fault insurance.  *Id*.

Importantly, in *Perez*, the Michigan Supreme Court cited favorably to its earlier decision in

*Mays v. Ins. Co. of North America*, 407 Mich. 165 (1979), where the Court held enforceable a

provision in a private insurance contract that allowed an insurer to set off of primary disability

benefits, regardless of actual receipt of such benefits by the insured, where the insured failed to apply

for those benefits.  The Michigan Supreme Court in *Perez* cited *Mays* not for its holding permitting

the set off of social security benefits where not applied for, but for its conclusion that the set off

allowance in the insurance contract at issue applied only to social security benefits, and not to

workers compensation benefits.  Nonetheless, *Mays* is important for its tacit approval of the set off

of social security benefits where the insured fails to apply for them, albeit in the context of a private

contract of insurance.

Fast forward to the Michigan Court of Appeals' decision in *Grau v. Detroit Automobile Inter-*

9

*Insurance Exchange*, 148 Mich. App. 82 (1986). The court of appeals in *Grau* authorized a double

set off of social security benefits, i.e. the court permitted both the no-fault insurer under section

3109(1), and plaintiff's employer pursuant to a collective bargaining agreement, to set off the full

amount of social security benefits that plaintiff was receiving. There was no question in *Grau* that

the insured had in fact received the SSD benefits at issue. Thus, the precise issue presented here, i.e.

whether such benefits can be set off if not in fact received, was not at issue and not addressed.

However, in rejecting plaintiffs contention that allowing the double set off would discourage injured

parties from seeking social security benefits, the court stated:

> Finally, plaintiff's contention that allowing both DAIIE and the Board to setoff Social
> Security disability benefits would discourage injured disabled parties from seeking
> Social Security disability benefits has little merit. M.C.L. § 500.3109(1); M.S.A. §
> 24.13109(1) provides that government benefits "provided or required to be provided"
> must be set off from the personal protection insurance benefits. The phrase "required
> to be provided" means that an injured person is obliged to use reasonable efforts to
> obtain benefits that are available from the government. The available government
> benefits can be set off even if they are not in fact paid if they are not paid due to a
> settlement or the failure of the injured person to use reasonable efforts to obtain
> them. *See Perez v. State Farm Mutual Automobile Ins. Co.*, 418 Mich. 634, 643-646,
> 651, 344 N.W.2d 773 (1984) (workers' compensation benefits); *Deppmeier v.
> Associated Truck Lines, Inc.*, 143 Mich. App. 244, 247, 372 N.W.2d 521 (1984)
> (workers' compensation benefits); *but see* OAG, 1981-1982, No 6111, p. 772
> (December 13, 1982) (Social Security disability benefits not set off unless received).

148 Mich. App. at 90-91. Thus, the Michigan Court of Appeals embraced the holding in *Perez* as

applying with equal force to set off of social security benefits.

Plaintiff relies on a 1982 Attorney General Opinion in support of her position that an insurer

cannot threaten the severance of wage loss benefits to force a claimant to file for SSD benefits. (Pl.'s

Mot. Ex. J.)  Attorney General Opinions are not binding on this Court and are at most persuasive

authority. *Risk v. Lincoln Charter Twp. Bd. of Trustees*, 279 Mich. App. 389, 398-99 (2008). In

OAG No. 6111 (Dec. 13, 1982), the Attorney General focused on the different standards applicable to an insured's entitlement to wage loss and social security benefits, the former being immediately available while SSD benefits are only available after proof of inability to engage in substantial gainful activity for at least one year. The Attorney General reasoned that wage loss no-fault benefits could not reasonably be withheld pending receipt of SSD benefits because this would result in a denial of immediately available benefits and thus would thwart a major legislative objective on the no-fault insurance system:

> The decision by insurance companies to refuse or reduce work loss payments unless the accident victim applies for and pursues social security disability benefits denies the victim assured, adequate and prompt reparation for his or her economic losses. Work loss benefits should begin immediately upon the determination of the amount to which the victim is entitled. An insurance company does not have the unilateral right to offset what it contemplates to be the amount the victim may be entitled to receive from some other governmental sources. The criteria administered by the Secretary of Health and Human Services are different from all those for entitlement to work loss benefits. An insurer may grant the immediate work loss benefits conditioned upon an assignment from the beneficiary of the social security disability payments actually received. However, the insurer could not unilaterally deduct from the work loss benefits those amounts which it alleges are required to be provided under federal law.

OAG 6111 at 2.

While seeming to directly support Plaintiff's argument, this OAG was issued prior to *Perez*, and its rationale flies directly in the face of the Michigan Supreme Court's reasoning and holding in *Perez*, as well as the Michigan court of appeals' suggestion in *Grau* that the rationale of *Perez* applies with equal force to both workers compensation and social security benefits. In fact, this AG Opinion was cited as contrary authority to the line of cases relied on by the Court of Appeals in *Grau*, and there was no discussion of the AG Opinion and certainly no acceptance by the Court of Appeals of any of the Attorney General's reasoning. 148 Mich. App. at 91. Moreover, in the instant

11

case, State Farm is not attempting to avoid its obligation to immediately pay wage loss benefits to Mr. Fields, indeed it began doing so immediately. Only after Mr. Fields refused, over a period of several months, to even begin the application process for SSD benefits, and stated through his attorney that he had no intention of doing so, did State Farm discontinue those payments and suggest that it would calculate what those benefits would be (albeit inartfully employing the term "guess" in their correspondence with Plaintiff) and begin to set off that amount from its wage loss payments to Mr. Fields.

Importantly, State Farm informed Mr. Fields that they would immediately resume payment of his wage loss benefits upon receipt of the proper notice that he had applied for SSD Benefits: "If Mr. Fields files for social security disability, we will resume paying allowable Wage Loss benefits in accordance with file documentation. He must provide us with periodic updates on the status of his social security claim." (Def.'s Mot. Ex. H.) There is no question that if Mr. Fields is ultimately denied SSD benefits, State Farm would not be entitled to any set off. The final letter from State Farm to Mr. Fields expressly recognizes that if he were to return to work prior to one year following his accident, he would not even be entitled to SSD benefits. (*Id.*)

State Farm has a substantial interest in encouraging its insureds who are potentially eligible for SSD benefits to apply for those benefits promptly so that they can preserve their right to collect them, in the event they are in fact eligible, to the fullest extent possible. As the Michigan Supreme Court recognized in *Mays*, a person entitled to no-fault wage loss benefits may not "deliberately or unwittingly forego governmentally mandated payments and nonetheless be entitled to full no-fault benefits." 418 Mich. at 644. It is for this reason that the Michigan courts have interpreted "[t]he "required to be provided" clause of §3109(1) [to mean] that the injured person is obliged to use

12

reasonable efforts to obtain payments that are available to them" from the government and to permit a no-fault insurer to subtract the amount of the available government benefit "even if [the insured] is not in fact paid because of the failure of the injured person to use reasonable efforts to obtain them." *Id.* at 646.

Plaintiff has offered no principled basis for treating SSD benefits differently from workers' compensation benefits in this context and decisions of the Michigan courts, in particular *Mays* and *Grau*, strongly suggest that Michigan courts would decide otherwise. Other than a 1982 opinion of the Michigan Attorney General, Plaintiff offers no support for the contention that Michigan courts would countenance a rule of law that would permit an insured, who may be entitled to receive government benefits, to refuse to apply for those benefits and to force a no-fault insurer to bear the full burden of what was intended under the Michigan no-fault scheme to be a shared burden whenever possible.

State Farm's goal in requiring its insured, who may be eligible for SSD benefits to make application for them, is entirely consistent with a central legislative objective of the No-Fault Act, observed by the Michigan Supreme Court in *Mays* and *Perez*, to help contain the premium costs of no-fault insurance. As the Michigan courts have recognized: "The purpose of § 3109(1) is to reduce the basic cost of insurance by requiring a setoff of those government benefits that duplicate no-fault benefits and coordinating those benefits a victim may receive." *Popma v. Auto Club Ins. Assoc.*, 199 Mich. App. 653, 658-59 (1983). It is inconceivable that the Michigan courts would leave all of the decisionmaking necessary for accomplishing this important goal in the hands of the state's insureds, who might decide on their individual whim whether or not to apply, or when to apply, for available government benefits or whether they may prefer to sit back and collect the full amount of loss from

13

their insurer. To be sure, wage loss benefits are limited under the statute to a three-year period and SSD benefits can be awarded on a permanent basis. For some insureds, this will be incentive enough to apply for SSD benefits, although the sense of urgency to do so will not be immediate.

It is important to remember that in the instant case, State Farm did not require Mr. Fields to apply for SSD benefits as a condition precedent to the immediate receipt of his wage loss benefits. They began paying those benefits to Mr. Fields immediately under the Policy. They also have made clear that they will resume paying those wage loss benefits immediately upon receipt of notice that Mr. Fields is at least making an effort to apply for available government benefits.

For these reasons, the Court declines to conclude as a matter of law that State Farm is not authorized, under Michigan law, to set off estimated SSD benefits where their insured has failed or refused even to apply for those government benefits.

## IV.    CONCLUSION

The Court DENIES Plaintiff's Motion for Partial Summary Judgment and alternative Motion to Strike Defendant's Affirmative Defenses 8, 12 and 13.

IT IS SO ORDERED.

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: 4/3/12

14