UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SONYA FIELDS, individually and as
Guardian and Conservator for
MITCHEL AVERY FIELDS, an
incapacitated person,                                    Case No. 11-15296

                Plaintiff,

                                    Paul D. Borman
                                    United States District Judge

v.

                                    R. Steven Whalen
                                    United States Magistrate Judge

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                Defendant.
_____/

OPINION AND ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 45) AND
(2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (ECF NO. 46)

      This matter is before the Court on the parties' cross-motions for summary and/or partial

summary judgment.  (ECF Nos. 45, 46.)[1]  Each party has filed both a response (ECF Nos. 48, 49)

and a reply (ECF Nos. 50, 51).  The Court held a hearing on April 24, 2013.  (ECF No. 47,

Transcript of April 24, 2013 Hearing.)  For the reasons that follow, the Court GRANTS IN PART

and DENIES IN PART the parties' motions.

_____

[1] The motions for summary and/or partial summary judgment presently before the Court superseded
and replaced the parties' earlier filed motions and briefs, ECF Nos. 15, 30, 32.  The parties were not
required to refile with their revised briefs exhibits that had already been filed.  Accordingly, where
pertinent, the Court will refer to Exhibits that previously were filed in support of the earlier-docketed
motions.

**INTRODUCTION**

State Farm Mutual Auto Insurance Company's ("State Farm") insured in this action, Mitchel Fields, was catastrophically injured in an automobile accident that occurred on April 10, 2010. His guardian and conservator, Sonya Fields, his wife, filed this action to recover certain benefits that State Farm allegedly has failed to pay, including attendant care, medical and wage loss benefits. On May 27, 2013, while the parties' motions for summary judgment were pending, Mitchel Fields passed away.

In its motion for partial summary judgment, Plaintiff claims entitlement to: (1) wage loss benefits based upon a job offer that Mr. Fields allegedly received the day of the accident for a full time position as a pharmacist earning between $50 and $58 per hour; (2) reimbursement of probate legal fees in the amount of $6,320.75, incurred in relation to obtaining and continuing the guardianship/conservatorship for Mr. Fields in the Oakland County Probate Court. For the reasons that follow, the Court concludes that the issue of whether Plaintiff is entitled to increased wage loss benefits based upon the alleged full-time job offer presents a genuine issue of material fact and DENIES Plaintiff's motion for summary judgment on this issue. The Court concludes that Plaintiff is entitled to probate related legal fees in the amount of $6,320.75 and GRANTS Plaintiff's motion for summary judgment on this issue.

In its motion for summary judgment, State Farm argues that: (1) Plaintiff's claim for additional wage loss benefits based upon the alleged job offer as a pharmacist paying $50 to $58 per hour is barred entirely because Mr. Fields is receiving Social Security disability benefits in excess of his provable wage loss; (2) Plaintiff's claim for work loss benefits and replacement services claims after September 28, 2011 are barred because Mr. Fields was disabled after that time due to

2

health issues unrelated to his accident; (3) Plaintiff's claims for legal fees incurred in relation to Mr. Fields's guardianship/conservatorship are not recoverable under the Michigan No Fault Act; and (4) Plaintiff's claims for No Fault benefits of any kind incurred before October 31, 2010 are barred by Michigan's one-year back rule, Mich. Comp. Laws § 500.3145.  For the reasons that follow, the Court concludes that issues of fact remain regarding whether Mr. Fields would have received the alleged full-time pharmacist job offer and whether Mr. Fields was disabled by unrelated health conditions.  Accordingly, the Court DENIES State Farm's motion for summary judgment on these issues.  The Court further concludes that Plaintiff is entitled to recover the probate-related legal fees and DENIES State Farm's motion on this issue.  Finally, the Plaintiff does not dispute that the one-year back rule applies and accordingly the Court GRANTS State Farm's motion on this issue.

## I.    BACKGROUND

When State Farm began paying Plaintiff wage loss benefits immediately following the accident on April 10, 2010, the wage loss amount was based upon information then available as to Mr. Fields's gross earnings in the prior year.  (ECF No. 15, Pl.'s Mot. Partial Summ. Judg. Ex. E, August 27, 2010 Letter from State Farm to Plaintiff's Counsel.)  The gross monthly earning at that time, which neither party disputed, was calculated to be $1,468.93.  State Farm paid this amount through August, 2010, when ultimately it ceased paying Plaintiff wage loss benefits because, it alleged, Mr. Fields refused to undertake reasonable efforts to apply for Social Security Disability ("SSD") benefits.  The amount that State Farm then speculated Mr. Fields would have received had he applied for and received SSD benefits exceeded the amount that State Farm believed it was obligated to pay Plaintiff in wage loss benefits, so State Farm ceased paying wage loss benefits altogether in August, 2010.  Plaintiff filed this action after State Farm ceased its wage loss payments.

3

In an Opinion and Order dated April 3, 2012, this Court denied Plaintiff's first Motion for Partial Summary Judgment (ECF No. 3), in which Plaintiff asked this Court to declare, as a matter of law, that State Farm had no legal basis to suspend Mr. Fields's No-Fault wage loss benefits based upon Mr. Fields's failure to apply for social security benefits. *Fields v. State Farm Mutual Auto. Ins. Co.*, No. 11-15296, 2012 WL 1119520 (E.D. Mich. April 3, 2012). The Court's narrow holding in that Opinion was as follows: "[T]he Court declines to conclude as a matter of law that State Farm is not authorized, under Michigan law, to set off estimated SSD benefits where their insured has failed or refused even to apply for those government benefits." *Id*. at *9. *See Popma v. Auto Club Ins. Ass'n*, 446 Mich. 460, 476 (1994) ("[E]ven if plaintiff had foregone the effort of securing the disability benefits, because they are "required" to be provided, they would have been subject to setoff regardless of the fact of actual receipt. Although the actual receipt of benefits by the claimant is significant, it is the amount provided or *required* to be provided that is determinative under § 3109(1). *See Perez v. State Farm Mutual Automobile Ins. Co.*, 418 Mich. 634, 645-646, 344 N.W.2d 773 (1984).") (emphasis in original).

The Court's ruling was very limited and the Court made no findings whatsoever regarding the propriety of the work loss calculation that State Farm had been paying, or whether Mr. Fields in fact used reasonable efforts to obtain SSD benefits, or whether State Farm had calculated a reasonable set off amount. This Court only declined to find as a matter of law that State Farm was precluded from ever estimating a SSD set off amount where an insured refused to make reasonable efforts to apply for SSD benefits. Plaintiff did not ask the Court to decide whether such efforts in fact had been made by Mr. Fields or whether the wage loss and/or set off amounts calculated by State Farm were proper. In fact, Plaintiff took the position that no efforts had been, or would be,

4

made by Mr. Fields to apply for SSD benefits. Accordingly, the Court rejects State Farm's argument that Plaintiff's motion to increase wage loss benefits based upon newly discovered evidence is in some way foreclosed by the Court's prior Opinion and Order. It is not.[2]

In this case, Mr. Fields has no memory of events that occurred on the day of the accident. Accordingly, he did not recall until long after his accident that just hours before the accident he had interviewed for a permanent position as a pharmacist and the potential employer with whom he interviewed allegedly was planning to offer Mr. Fields a full-time position, at an hourly rate between $50 and $58/hour. These facts came to light on March 27, 2012, when the deposition of Mohamed Hamieh was taken in a related lawsuit involving Mr. Fields's accident. Mr. Hamieh testified that on the afternoon of April 10, 2010, at approximately 2:00 p.m., Mr. Fields interviewed with him and was offered a job as a full-time pharmacist at a pharmacy owned and operated by Mr. Hamieh:

> Q:   All right. Did you offer [Mr. Fields] a job on the spot?
>
> A:   We usually don't offer someone a job on the spot but it was very positive that we were going to give him a job.
>
> Q:   How much were you going to pay him?
>
> A:   Anywhere between $50 and $58 an hour.
>           *          *          *
> Q:   He was going to be a full time employee?

---

[2] Significant to the Court's prior ruling, as the Court noted in its prior Opinion and Order, was the fact that in this case State Farm began paying Plaintiff wage loss benefits immediately following the accident and represented to the Court that it would have continued paying those amounts if Plaintiff had demonstrated that Mr. Fields had begun reasonable efforts to apply for SSD benefits. State Farm indicated that wage loss payments would have continued uninterrupted until, if ever, Mr. Fields began actually receiving SSD benefits. 2012 WL 1119520, at *7. The Court was not called upon to decide whether an insurer could refuse to begin immediately paying wage loss benefits on the condition that an insured apply for SSD benefits. No such effort to immediately hold No Fault benefits hostage was made by State Farm in this case and thus the goals of the No Fault statute to provide immediate wage loss compensation were in no way compromised.

5

A:      Yes, he was going to be a permanent employee.

*          *          *

Q:       All right. So, and his hours, assuming he would have stayed at the Southgate location, would have been when to when?

A:      9:00 to 5:00 . . . five days a week, maybe six or Saturday depending on everybody needs a break one day.

*          *          *

Q:      Did the job offer for Mr. Fields, did that ever get put into writing?

A:      No, did not get put into writing.

*          *          *

Q:      You never offered him a job?

A:      When he left the pharmacy, we told him that, you know, "When can you start?" and stuff like that, and then I probably said, "I want to talk to my wife, find out when is the exact date that we want you to come back to work," so verbally, yes, we did.

Q:      So, when you . . . did you tell him, "You got the job?"

A:      I told him, "Let me talk to my wife to see when you can start."

Q:      Okay.

A:      This is how we offer the job, but that, yeah, that means, yes you got the job.

Q:      Okay. And did you tell him, "This is going to be what we're going to pay you?"

A:      We did not discuss pay, but the pay usually is anywhere between $50 and $58 an hour.

ECF No. 15, Pl.'s Mot. Summ. Judg. Ex. D, Deposition of Mohamed S. Hamieh in *Fields v. Fierro*, Case No. 10-14406 (E.D. Mich. Zatkoff, J.) pp. 14-15, 17-18, 41-42.

On October 5, 2012, Mr. Fields did apply for SSD benefits. (ECF No. 45, Pl.'s Mot. Summ. Judge. Ex. C.) On March 25, 2013, Mr. Fields was awarded benefits beginning October, 2011, one-year back from the date of his application. *Id.* Mr. Fields was awarded a lump sum of $39,687 for the time period October, 2011 through February, 2013 and was awarded a monthly payment going

6

forward of $2,377 beginning March, 2013. *Id*. State Farm argues that this amount exceeds Mr. Fields's maximum potential wage loss and therefore no further benefits are payable. Plaintiff argues that Mr. Fields would still be entitled to receive the difference between the SSD monthly award of $2,377 and the amount that he would have made working as full-time pharmacist making $50-$58 per hour. State Farm counters that, even assuming Plaintiff could establish work loss entitlement beyond what State Farm has paid, Mr. Fields was otherwise disabled from performing the work of a pharmacist and further argues that the award of SSD benefits establishes that Mr. Fields would have been awarded such benefits earlier and therefore is precluded from recovering additional benefits based upon his failure to mitigate his damages by immediately filing for SSD benefits.

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may file a motion for summary judgment "at any time until 30 days after the close of all discovery," unless a different time is set by local rule or court order. Fed. R. Civ. P. 56(b). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. *See also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact

"would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce

8

more than a scintilla of evidence to survive summary judgment). "A genuine issue of material fact exists if a reasonable juror could return a verdict for the nonmoving party." *Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 759 (6th Cir. 2010).

"Rule 56(e)(2) leaves no doubt about the obligation of a summary judgment opponent to make [his] case with a showing of facts that can be established by evidence that will be admissible at trial.... In fact, '[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.' Rule 56(e) identifies affidavits, depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).

"In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986)). "Thus, the facts and any inferences that can be drawn from those facts[ ] must be viewed in the light most favorable to the non-moving party." *Id*. (alteration in original) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) and *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005)).

III.   **ANALYSIS**

A.   **Wage Loss Benefits**

"'[W]ork loss benefits compensate the injured person for income he would have received, *but for* the accident.'" *Marquis v. Hartford Acc. & Indem.*, 444 Mich. 638, 645 (1994) (quoting *MacDonald v. State Farm Ins. Co*., 419 Mich. 146, 152 (1984)) (emphasis in original). The

9

Michigan No-Fault statute requires payment for "[w]ork loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured." Mich. Comp. Laws § 500.3107(1)(b). However, a claimant is entitled only to actual lost wages, not loss of earning capacity. In *Marquis*, the Michigan Supreme Court confirmed that "work loss" along with "'the other components of loss, is restricted to accrued loss, and thus covers only actual loss of earnings as contrasted to loss of earning capacity.'" 444 Mich. at 647 (quoting *Ouellette v. Kenealy*, 424 Mich. 83, 86-87 (1985)).

Importantly, an individual need not be employed at the time of the accident to be entitled to work loss benefits and "[w]ork loss is not restricted to the injured person's wage level at the time of injury." *MacDonald*, 419 Mich. at 151. *See Sullivan v. North River Ins. Co*., 238 Mich. App. 433, 437 (1999) ("[T]he *MacDonald* court clearly recognized that a claimant's entitlement to work-loss benefits is not dependent on being employed at the time of the accident, but rather whether the claimant can prove that, but for the accident, she would have been employed and, as a consequence, would have suffered actual loss of earnings."). However, "when a person becomes unemployed voluntarily rather than due to the unavailability of work, he is not temporarily unemployed." *Stanny v. Progressive Michigan Ins. Co.*, No. 280916, 2008 WL 5158871, at *1 (Mich. Ct. App. Dec. 9, 2008) (quoting *Sullivan*, 238 Mich. App. at 436 n. 2.).

Moreover, if a plaintiff is unemployed due to physical disability, he is not "temporarily unemployed" for purposes of recovering wage loss benefits. "[T]hose who are temporarily unemployed in the colloquial sense by a disability unrelated to an automobile accident are not "temporarily unemployed" in the statutory sense because they have no income from work or its equivalent to lose. Benefits for "work loss," therefore, are unavailable." *MacDonald*, 419 Mich. at

153-54.

Michigan courts have applied these principles to conclude that a plaintiff seeking wage loss benefits is not precluded from relying on evidence that, but for the accident, he or she would have accepted a higher paying job. In *Swartout v. State Farm Mut. Auto. Ins. Co*., 156 Mich. App. 350 (1986), the court held that a question of fact as to the appropriate wage loss amount was presented, and precluded summary judgment, where plaintiff had provided evidence that, but for the accident, she would have been hired in a particular position at a particular rate of pay beginning on a date certain. Distinguishing *Gerardi v. Buckeye Union Ins. Co*., 89 Mich. App. 90 (1979), a case in which a nursing student involved in an accident was denied wage loss benefits where, at the time of the accident, she had a year of nursing school remaining and therefore was not qualified for a job in her profession as a nurse on the date of the accident, the Court in *Swartout* held:

> In contrast, plaintiff in the instant case has alleged facts which, if believed, would establish the source of her employment, the exact date of employment and the exact wages that would have been received between July of 1981 and June of 1982. In other words, plaintiff has stated a claim for wages that would, rather than could, have been earned but for her injuries. We therefore conclude that plaintiff's claim should have survived defendant's motion for summary disposition.

*Swartout*, 156 Mich. App. at 354.

*Swartout* teaches that if a plaintiff can provide evidence of the date, source and wage of employment that would have been earned but for the accident, a question of fact has been presented that precludes entry of summary judgment. In the face of such evidence, "the question of whether plaintiff would have received income but for her injuries should be left to the trier of fact." *Id*. at 355. Several Michigan courts have applied *Swartout*, and in some instances noted that *Swartout* did not establish an evidentiary threshold, and finding an issue of fact based upon even less compelling evidence of job certainty. *See. e.g., Sullivan*, 238 Mich. App. at 437-38 (finding question of fact

11

regarding plaintiff's entitlement to wage loss benefits despite fact that she was unemployed at the time of the accident, and could not present affidavit evidence of a particular job at a particular wage, where she demonstrated an extensive work history, skill set and intent to gain employment); *Sparks v. Citizen Ins. Co. of America*, No. 289395, 2010 WL 2076947, at *3-4 (Mich. Ct. App. May 25, 2010) (finding plaintiff had created a genuine issue of fact regarding her entitlement to wage loss benefits despite fact that plaintiff was unemployed at the time of the accident and failed to present evidence of a specific date that she would have resumed employment at a particular wage, where an affidavit of a potential employer stated that plaintiff was an excellent hygienist and that it was hoped that she would be worked back into the schedule). *See also Oswalt v. State Farm Mut. Auto. Ins. Co*., No. 11-12080, 2012 WL 580462, at *3 (E.D. Mich. Feb. 22, 2012) (finding that "evidence of specific employment, not merely conjectural employment, is sufficient to preclude summary judgment" on a wage loss benefits claim even if the employment is conditioned on completion of certain training and certification).

In this case, there are genuine issues of material fact regarding whether or not Mr. Fields would have been employed by Mr. Hamieh as full-time pharmacist at a wage of $50-58 per hour. Mr. Fields had no memory of events that occurred on the day of the accident. Mr. Hamieh testified that on the afternoon of April 10, 2010, at approximately 2:00 p.m., Mr. Fields interviewed with him and was going to be offered a job as a full-time pharmacist at a pharmacy owned and operated by Mr. Hamieh, earning between $50 and $58 per hour. While State Farm argues that the pharmacist job was uncertain and that Mr. Fields would have been unable to perform the job, the Court concludes that Plaintiff's evidence is sufficient under *Swartout*, *Sullivan* and *Sparks*, to create a genuine issue of material fact regarding whether Mr. Fields would have earned $50 to $58 an hour

12

on a full-time basis working as a pharmacist at Mr. Hamieh's pharmacy and whether he would therefore be entitled to some amount of work loss benefit based on these lost wages.

State Farm argues that Mr. Hamieh's testimony, taken from a deposition in a different proceeding and therefore not part of the record in this case, would not be admissible at trial and therefore cannot be used to support Plaintiff's motion for summary judgment. State Farm spends a good deal of time in its briefs discussing the use of depositions at trial. But this argument misses the mark. While the Court expresses no opinion at this point on the admissibility at some later date of Mr. Hamieh's deposition testimony, the Court notes that Mr. Hamieh is listed as a witness on Plaintiff's witness list and there is therefore good reason to believe that Plaintiff will be able to offer this evidence in an admissible form at trial. Evidence offered in support of or in opposition to a motion for summary judgment need not itself be in admissible form. For example, in *Swartout*, *supra*, the court found a genuine issue of fact as to plaintiff's employment prospects and wage loss benefits entitlement based upon an affidavit from a hospital employee indicating when plaintiff would have been employed and what her rate of pay would have been. 156 Mich. App. at 352. The court in *Swartout* left it "for the trier of fact to determine whether plaintiff would have received income through employment as a nurse during any of the time she lost as a result of the accident." 156 Mich. App. at 353. Such affidavit testimony is sufficient to support a summary judgment motion if the substance of the testimony will be admissible at trial:

> The submissions by a party opposing a motion for summary judgment need not themselves be in a form that is admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."). Otherwise, affidavits themselves, albeit made on personal knowledge of the affiant, may not suffice, since they are out-of-court statements and might not be admissible at trial. *See* Fed. R. Evid. 801(c), 802. However, the party opposing summary judgment must show that she can make

13

good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary. Such "'evidence submitted in opposition to a motion for summary judgment must be admissible.'" *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (quoting *United States Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997)). That is why "'[h]earsay evidence . . . must be disregarded.'" *Ibid*.

*CareSource*, 576 F.3d at 558. *See also Peltier v. Macomb County, Michigan*, No. 10-10796, 2011 WL 5178282, at * 2-3 (E.D. Mich. Nov. 1, 2011) (finding that supervisor's attendance notices that were unsupported by testimony or affidavits at the summary judgment stage were properly relied upon because "[a]t the summary judgment stage all that is required is that the evidence be capable of being presented at trial in an admissible form," and finding that the supervisor's testimony could be presented in an admissible form at trial). The question is not, as State Farm argues, whether the deposition would be admissible at trial but whether the substance of Mr. Hamieh's testimony would be admissible at trial. Given that Mr. Hamieh is listed on Plaintiff's witness list, and that the substance of his testimony is based on his personal knowledge and could conceivably be presented in a non-hearsay form, it appears that Plaintiff will be able to "make good on the promise of the pleadings [and has laid] out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary on the substance of the testimony." *CareSource*, 576 F.3d at 558.

Finally, State Farm complains that it did not have an opportunity to cross-examine Mr. Hamieh because it was not given notice of the deposition. The Court notes that State Farm has had notice of this testimony since early April, 2012, months before discovery closed in this case. State Farm never attempted to depose Mr. Hamieh and offers no evidence to rebut the substance of Mr. Hamieh's testimony.

State Farm not only questions whether in fact Mr. Fields was offered this job position but also argues that even if he did receive the offer, he would not have been able to do the work due to complications from his diabetes and other pre-existing conditions. (ECF No. 46, Def.'s Mot. Summ. Judg. 14-16.)  In support of this contention, State Farm sets forth a long history of Mr. Fields's pre-accident diabetic-related conditions and argues that based on this evidence, and the opinion of Dr. Daniel Aronovitz, a podiatrist who treated Mr. Fields for an ulcerated foot, that Mr. Fields was rendered disabled from work due to his diabetic foot effective September 28, 2011. (ECF No. 33, Def.'s Mot. Summ. Judg. Ex. C, May 23, 2012 Certificate of Disability Verified by Daniel C. Aronovitz, DPM; ECF No. 46, Def.'s Mot. Summ. Judg. 3-6, 14-16.)  This evidence, however, is contradicted by the very fact that, viewing the facts in the light most favorable to Plaintiff, on the date of the accident, Mr. Fields was working as a pharmacist and interviewed for a permanent position as a pharmacist on that date.  Although State Farm offers medical evidence that supports the contention that Mr. Fields did suffer from complications of diabetes pre-accident, and offers Dr. Aronovitz's opinion that Mr. Fields's ulcerated foot disabled him from working as of September 28, 2011, Plaintiff offers evidence that Mr. Fields was in fact working as a pharmacist and performing household chores before the accident and offers evidence that Dr. Aronovitz subsequently recanted in part his September 28, 2011 opinion regarding Mr. Fields's disability status. (ECF No. 39. Pl.'s Resp. Ex. P, November 8, 2012 Letter from Dr. Aronovitz to State Farm.)  Plaintiff argues that Dr. Aronovitz never intended to opine whether Mr. Fields was disabled from work and household chores due to his ulcerated ankle *separate and apart* from his underlying disabling conditions due to his automobile accident.  This evidence creates a genuine issue of material fact as to whether Mr. Fields would have been physically able to perform the duties of a full-time pharmacist and precludes a

15

determination of this issue on summary judgment.[3] Likewise, State Farm's argument that Mr. Fields failed to mitigate his damages in this case by declining to timely apply for SSD benefits is a question of fact for the jury. *Bak v. Citizens Ins. Co. of America*, 199 Mich. App. 730, 739 (1993) ("Reasonableness of mitigation is a question of fact.").

### B. Mich. Comp. Laws § 500.3145 Bars Claims for Benefits Before October 31, 2010

Plaintiff filed its claim for No Fault benefits on October 31, 2011. Plaintiff appears to concede that under Michigan's "one year back" rule, Mich. Comp. Laws § 500.3145(1), which provides in relevant part that a "claimant may not recover benefits for any portion of the loss incurred more than one year before the date in which the action was commenced . . .," any claim for benefits prior to October 31, 2010 is barred. "Plaintiff pleads no contest to the case and law as provided in the Defendant's motion for summary judgment. . . . Owing to the one year back rule, the summary judgment would apply to the period of time from April 10, 2010 until October 31, 2010." (ECF No. 39, Pl.'s Resp. 7.)

At the April 24, 2013 hearing on the parties' motions for summary judgment, Plaintiff's counsel did not dispute that application of the rule here bars any claim for benefits prior to October 31, 2010. (ECF No. 47, Hr'g Tr. 11-12.) Accordingly, the Court GRANTS State Farm's motion on this issue.

### C. Plaintiff's Claim for Guardianship/Conservatorship Probate Court Attorney's Fees and Costs Pursuant to Mich. Comp. Laws § 500.3107(1)(a)

Both parties seek summary judgment on this issue. Plaintiff seeks to recover, and State Farm

---

[3] State Farm also suggests that payments it has made as "replacement services" are likewise barred as of September 28, 2011. (ECF No. 32, Def.'s Mot. Summ. Judg. 6-7.) For the same reason that genuine issues of material fact exist regarding the work loss benefits, summary judgment on the issue of replacement services is also denied.

has refused to pay, fees incurred by Mr. Lerner in connection with services rendered in relation to Oakland County Probate Court ("OCPC") proceedings from November 28, 2011 through July 12, 2012, in connection with obtaining and continuing Mr. Fields's guardian/conservator. (ECF No. 45, Pl.'s Mot. Summ. Judg. Exs. N, S.)   As State Farm frames the issue: "The fundamental disagreement, which is the basis of Plaintiffs' motion and Defendant's response and counter-request for summary judgment, is whether the remaining unpaid guardian/conservator fees incurred [by Mr. Lerner] after November 28, 2011 are the responsibility of State Farm under the No Fault Statute." (ECF No. 49, Def.'s Resp. 10.)

On April 28, 2011, Judge Linda S. Hallmark, Oakland County Probate Court, signed an Order appointing Mrs. Fields as Mr. Fields's full guardian and conservator and extended those orders through June 23, 2012 and June 23, 2013, respectively.[4]  (ECF No. 45, Pl.'s Mot. Summ. Judg. Ex. B, H, I.)  State Farm does not challenge the fact that Mr. Lerner's legal fees, which relate directly to proceedings in the OCPC regarding the appointment of Mrs. Fields as Mr. Fields's guardian and conservator and/or to her continuation in those positions (*see* ECF No. 45, Pl.'s Mot. Summ. Judg. Ex. S), are a category of legal fee that relates to Mr. Fields's care.  Indeed, State Farm paid these types of fees for Mr. Lerner's services since his bills were first submitted in April, 2010. State Farm concedes that these are allowable expenses under the No Fault Act as evidenced, they say, by the fact that they have already paid them.  (ECF No. 49, Def.'s Resp. 12.)  State Farm has already paid $2,306.50 in attorneys' fees (at Mr. Lerner's billing rate of $300/hour) as allowable

_____

[4] The Court notes that the Letters of Conservatorship attached by Plaintiff indicate that they extend to June 23, 2013.  (ECF No. 45, Pl.'s Mot. Ex. B.)  The Letters of Guardianship indicate that they extend to June 23, 2012. *Id*.  Mr. Lerner's billing statements indicate that he continued to appear in the OCPC and to seek continuation of the guardianship and conservatorship through July 12, 2012.  (Pl.'s Mot. Ex. S.)

expenses under Mich. Comp. Laws § 500.3107(1)(a). (ECF No. 49, Def.'s Resp. Ex. L, Nov. 9, 2011 Letter from State Farm to Mr. Lerner; Ex. M, Oct. 26, 2012 Deposition of Gina Irelan 81-83.) In their recently-filed reply brief, State Farm again concedes that previously these fees "were reasonably necessary as . . . evidenced by the fact that State Farm paid these fees incurred through November 28, 2011." (ECF No. 51, Def.'s Reply 6.)

State Farm has refused to pay the additional attorneys' fees that are the subject of this motion because they now dispute that guardianship or conservatorship services continued to be reasonably necessary for Mr. Fields's care, recovery or rehabilitation after November 28, 2011. (ECF No. 49, Def.'s Resp. Ex. M, Irelan Dep. 81-83.) However presented, State Farm's challenge to Mr. Lerner's fees is an indirect assault on Judge Hallmark's conclusion that guardianship and conservatorship services continued to be necessary for Mr. Fields care and recovery. State Farm seeks to prove in this Court that, notwithstanding Judge Hallmark's orders, guardianship and conservatorship services were no longer necessary for Mr. Fields care and recovery after November 28, 2011 and therefore to argue that Mr. Lerner's fees in successfully obtaining those orders are not allowable expenses under the No Fault Act. (ECF No. 49, Def.'s Resp. 7.) State Farm asserts that: "Plaintiffs have never requested any ruling from the OCPC that the ongoing guardianship/conservator fees are allowable expenses under the No Fault Act . . .." (*Id.*) Nor has State Farm requested that Judge Hallmark reverse or revise her guardianship/conservatorship orders. Any ruling by this Court in State Farm's favor on this issue would directly call into question Judge Hallmark's findings and guardianship/conservatorship orders and would not, in any event, necessitate a finding that Mr. Lerner's fees in successfully obtaining and continuing a guardian/conservator for Mr. Fields are therefore not allowable expenses under the No Fault Act.

18

State Farm argues that this issue is controlled by recent Michigan case law holding that services performed by a conservator that are not peculiar to the insured's injured status are replacement services, not allowable expenses under the No Fault Act. *See In re Carroll*, 300 Mich. App. 152 (2013) (holding that only services that relate to an insured's "peculiar needs as an *injured person*" are compensable as allowable expenses under Mich. Comp. Laws § 500.310(1)(a) and finding that services that were required "both before and after the injury," but after the injury can no longer be performed the insured, are replacement services under § 500.3107(1)(c) and capped at $20/day for three years after the accident) (emphasis in original). However, this is not a dispute over specific guardian/conservator expenses - indeed the Court has no idea whether Mrs. Fields performed services for Mr. Fields that would qualify as allowable expenses or replacement services. State Farm concedes this point. (ECF No. 49, Resp. 13-14.) This action seeks only to recover attorney fees incurred by Mr. Lerner in obtaining and continuing a guardianship/conservatorship for Mr. Fields. Regardless of whether Mrs. Fields is having only to perform ordinary services that were required both before and after Mr. Fields's injury (not an allowable expense under *Carroll*) or negotiate with his medical providers (an allowable expense under *Carroll*), the fees incurred by Mr. Lerner in securing a guardian/conservator for Mr. Fields are necessarily related to Mr. Fields's status as an injured person. There is no question that Mr. Fields was not in need of a guardian before the injury and these fees in obtaining and continuing the letters of guardianship/conservatorship are indisputably related to Mr. Fields's peculiar needs as an injured person. *See In re Geror*, 286 Mich. App. 132, 136 (2009) (finding that legal fees incurred in preparing for insured's guardianship hearing were "directly related to petitioner's care, and therefore . . . [were] allowable expenses pursuant to MCL 500.3107(1)(a)").

19

The OCPC has issued orders finding a continuing need for a guardian/conservator for Mr. Fields, and those orders stand unchallenged in the OCPC.[5]  State Farm concedes that charges by Mr. Lerner in connection with his services in the OCPC in obtaining letters of guardianship/conservatorship are payable expenses under the No Fault act, "proven by the fact that State Farm has already issued payment for [such] fees incurred through November 28, 2011." (ECF No. 49, Def.'s Resp. 12.)  Mr. Lerner's billing statements reveal that his services post-November 28, 2011 were no different in nature from those previously reimbursed by State Farm without challenge.  (Pl.'s Mot. Ex. S.)  State Farm's objection to the need for a continuing guardianship/conservatorship for Mr. Fields is not properly resolved through a challenge to Mr. Lerner's fees incurred in successfully obtaining a guardian/conservator for Mr. Fields.  Mr. Lerner's fees incurred in connection with obtaining the OCPC Orders post-November 28, 2011 are recoverable as allowable expenses under the No Fault Act.  With Mr. Fields's passing on May 27, 2013, no further billings in connection with his guardianship/conservatorship are anticipated.  Accordingly, the Court GRANTS Plaintiff's motion for recovery of $6,320.75 in probate legal fees.

## IV.    CONCLUSION

Whether Plaintiff is entitled to increased wage loss benefits based upon the alleged full-time pharmacist job offer, and whether Plaintiff failed to mitigate damages, present genuine issues of

---

[5] State Farm offers the reports of three physicians who examined Mr. Fields who allegedly indicate in their reports that Mr. Fields does not need a guardian or conservator. (ECF No. 46, Def.'s Mot. Exs. CC, DD, EE-GG.)  If State Farm believed that these reports demonstrated that Mr. Fields was no longer in need of a guardian or conservator, they could have presented those reports to Judge Hallmark in an effort to convince the OCPC to cancel or revoke the guardianship/conservatorship appointments.  Those reports, however, are of no probative value here.

material fact.  Accordingly, the Court DENIES the parties' motions for summary and/or partial summary judgment on these issues.  (ECF Nos. 45, 46.)

The Court further concludes that Plaintiff is entitled to recover probate related legal fees in the amount of $6,320.75 and GRANTS Plaintiff's motion for summary judgment on this issue.

The Court further finds that Plaintiff's claims for No Fault benefits prior to October 31, 2010 are barred by Mich. Comp. Laws § 500.3145 and GRANTS Defendant's motion for summary judgment on this issue.

IT IS SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  November 22, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 22, 2013.

s/Deborah Tofil
Case Manager

21